UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

CURTIS BRANCH, # 227547,  )
         )
      Petitioner, )  Case No. 1:07-cv-1283
         )
v.         )  Honorable Robert Holmes Bell
         )
THOMAS G. PHILLIPS,   )
         )  **REPORT AND RECOMMENDATION**
      Respondent. )
_____)

    This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. §

2254. Petitioner is serving a sentence of 10-to-20 years' imprisonment imposed by the Wayne

County Circuit Court on September 20, 2002, after petitioner was found guilty in a bench trial of

possessing between 50 and 225 grams of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(iii), and

possession of marijuana, MICH. COMP. LAWS § 333.7403(2)(d). The trial court conducted an

evidentiary hearing on the issue of ineffective assistance of counsel and granted petitioner a new trial

on this ground. On direct appeal, the Michigan Court of Appeals reversed the grant of a new trial

and reinstated the conviction. The Michigan Supreme Court denied leave to appeal in a standard

order. This habeas corpus action followed.

    The *pro se* habeas corpus petition raises the same claim rejected by the state Court

of Appeals and Supreme Court:

    THE PATENTLY FRIVOLOUS ARGUMENTS OF TRIAL COUNSEL AND THE
    DESTRUCTION OF EVIDENCE BY THE POLICE AFTER THE TRIAL COURT
    REQUESTED ITS PRODUCTION IN COURT DENIED PETITIONER HIS SIXTH

AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS
FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW.

(Petition, docket # 1, Attachment 1). Judge Robert Holmes Bell has referred this matter to me for review of the record and issuance of a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Rule 10, RULES GOVERNING SECTION 2254 CASES IN THE DISTRICT COURTS. I conclude that petitioner's two claims for relief are meritless and recommend that the habeas corpus petition be denied.

## Proposed Findings of Fact

### A.    Pretrial Proceedings

The state prosecution arose from a traffic stop conducted by Officer Daniel Mack of the Allen Park Police Department on January 29, 2001. Officer Mack, who was in a marked police car patrolling the Southfield expressway, conducted a traffic stop when he determined that petitioner had been driving 85 mph in a 55-mph zone. The officer smelled the odor of marijuana from inside the car and conducted a pat-down. Petitioner ultimately told the officer that he had a small amount of marijuana in his left pants pocket. The officer found the marijuana and placed petitioner under arrest. Subsequent search of petitioner's person incident to arrest disclosed two plastic baggies in his coat pocket, containing a chalk-like substance that the officer believed was cocaine. The officer found a third baggie in another of petitioner's pockets. Petitioner was charged in the 24th District Court with possession of more than 50 but less than 225 grams of cocaine and possession of marijuana.

Petitioner appeared before the 24th District Court for a preliminary examination on April 30, 2001. Petitioner was represented by retained counsel Marvin Barnett. The only witness

called by the prosecution was Officer Mack. (*See* Preliminary Examination Transcript (PE), docket # 13). Officer Mack testified concerning the circumstances leading to his discovery of controlled substances on petitioner's person. Counsel stipulated to the forensic report prepared by David E. Burke, Ph.D., a chemist employed by the Michigan State Police laboratory, who had tested the chalky substance found on petitioner and determined that it was cocaine, "weight being just right at 75 grams." (PE, 32-33). Counsel for defendant informed the court that defendant was not disputing the existence of probable cause. "There's probable cause, and we agree on the facts." (PE, 42). Rather, counsel challenged the propriety of the pat-down that led the officer to find the contraband and argued that the case should be dismissed on the ground of an illegal search. (*Id.*, 42-43). The district judge found that the officer had a right "for his own protection and safety to have a limited pat-down search." (*Id.*, 44). The court found that the officer discovered the marijuana as a result of petitioner's admission after the pat-down and that the cocaine was found only after petitioner was under arrest, pursuant to a search incident to arrest. On this basis, the district judge bound petitioner over on both charges. (*Id.*, 44-45). After the circuit court arraignment, the court granted petitioner appointed counsel and assigned attorney Carin Goldfarb.

In circuit court, defense counsel Goldfarb moved to suppress the drugs as fruits of an illegal search and seizure. The Wayne County Circuit Court, Honorable Brian R. Sullivan, conducted an evidentiary hearing on November 21, 2001. (Hearing Transcript (HT), docket # 14). Officer Mack testified concerning the events that led to his discovery of marijuana and cocaine. The court took the matter under advisement until December 12, 2001, when the parties returned to court for an oral ruling. (*See* Ruling Transcript (RT), docket # 15). The court made findings of fact concerning the events leading up to the search. The court found (1) that petitioner was not in custody

when the officer asked him whether he had marijuana, so *Miranda* warnings were not required (RT, 17-18); (2) petitioner's admission concerning the marijuana provided probable cause for petitioner's arrest; (3) the officer was entitled to search petitioner incident to the lawful arrest; and (4) the cocaine was therefore discovered pursuant to a lawful search. (RT, 19-20). The motion to suppress was denied.

After the court issued its ruling, defense counsel Goldfarb questioned a discrepancy between the quantity of cocaine reflected in the police report (75 grams) and the quantity reflected in the laboratory report (67.68 grams). Even though both quantities were sufficient under the statute, which applied to cocaine in excess of 50 grams, defense counsel asked that the controlled substances be weighed again. The prosecutor did not object to the request, and the court ordered that the cocaine be re-weighed. (RT, 21-23).

Petitioner and counsel appeared before the circuit court on January 4, 2002, for a pretrial conference. At the outset of the conference, defense counsel informed the court that petitioner was asking that the matter be tried without a jury. The court placed petitioner under oath and questioned him to determine that his waiver of the right to trial by jury was knowing and voluntary. The court made appropriate findings. Defense counsel then asked that the drugs and the chemist who tested them be present at trial, which the court granted. (*See* Pretrial Transcript, docket # 16).

### B.    Trial

Petitioner again retained attorney Marvin Barnett, and they appeared before Honorable Carole F. Youngblood, Wayne County Circuit Court, on March 17, 2002, for the

commencement of a non-jury trial. (Trial Transcript (TT) I, docket # 17). The prosecution's sole witness was Officer Daniel Mack, who testified for a third time concerning the events of January 29, 2001. (TT I, 7-46).[1] During cross-examination of the officer, defense counsel confronted him with the discrepancy between the amount of cocaine shown in the police report (75 grams) and the amount shown in the Michigan State Police laboratory report (67.68 grams). (TT I, 37-41). The officer was unable to explain the 8-gram discrepancy.

After the People rested, defense counsel moved for a directed verdict, presenting two essential arguments. First, counsel argued that the statute is violated only by possession of a "mixture" containing cocaine. "Michigan law does not punish the possession of cocaine. It punishes the mixture. They have not shown you any mixture here today." (TT I, 51). Counsel asserted that the possession of pure cocaine is not criminal under Michigan law. Second, counsel argued that Michigan law did not allow aggregation of the three quantities of cocaine found on petitioner's person. Therefore, at best, the prosecution proved possession of three quantities of cocaine, each less than 50 grams, and the statutory minimum quantity was not met. (*Id.*, 52-53). The court denied the motion for directed verdict in an oral ruling. (*Id.*, 63-65).

Defense counsel rested without calling any witnesses. The parties then delivered final arguments. Defense counsel repeated the same issues in final argument, asserting that the statute criminalizing possession of cocaine was aimed only at crack cocaine, which involves a mixture of pure cocaine and other substances, and did not seek to criminalize the possession of pure cocaine.

---

[1] Despite his request at the pretrial conference that the cocaine and chemist be produced at trial, defense counsel dropped this request by the time of trial and stipulated to the admission of the laboratory report without objection. (TT I, 46, 50-51). Apparently, the cocaine was never re-weighed.

(TT I, 67-69). After hearing final argument, the court recessed until the next business day. When the court reconvened, Judge Youngblood made oral findings rejecting petitioner's legal arguments and determining that the prosecution had proved its case beyond a reasonable doubt. (TT II, docket # 18).

Petitioner was sentenced on September 20, 2002, to the mandatory term prescribed by statute -- a minimum of 10 years and a maximum of 20 years in prison. (Sentencing Transcript, docket # 19).

### C. Post-Judgment Proceedings

#### 1. Evidentiary Hearing

Petitioner, represented by new counsel, appealed as of right to the Michigan Court of Appeals. While the appeal was pending, petitioner filed a *pro se* motion for a new trial for an evidentiary hearing, alleging ineffective assistance of counsel on the part of attorney Marvin Barnett. The motion asserted several grounds of alleged ineffectiveness, including failure to subpoena the in-car camera videotape of the incident, failure to call petitioner's wife as a witness, and failure to challenge the weight of drugs found on petitioner's person. The court granted petitioner an evidentiary hearing, which consumed eight days over a ten-month period (November 19, 2003, to September 24, 2004).[2] Petitioner was represented at these hearings by Richard Korn, his appellate counsel.

---

[2] Ironically, the trial itself took one day and consumes 72 pages of transcript. The evidentiary hearing to inquire into counsel's effectiveness was conducted over eight days and consumes 480 pages of transcript.

The court conducted the first day of evidentiary hearing on November 19, 2003. (*See Ginther* Hearing Transcript (GHT) I, docket # 20).[3] The People called Lieutenant Mark Koller and Officer Daniel Mack, both of the Allen Park Police Department, who testified that the patrol car driven by Officer Mack on the night in question did not have video recording equipment. (This testimony was relevant to petitioner's contention that his counsel was ineffective for failing to subpoena the in-car videotape.) The People then called defense attorney Marvin Barnett to testify concerning his strategies, actions, and omissions as defense counsel for petitioner. Appellate counsel questioned Mr. Barnett concerning the defense raised at trial, namely, that the statute criminalized only possession of a mixture containing cocaine and not pure cocaine itself. (GHT I, 47-48). Mr. Barnett believed that this issue was a matter of first impression under state law. (*Id.*, 48). "But I do believe that the law requires there to be a mixture of cocaine, and that the presence of cocaine without a mixture does not satisfy the essential elements of the offense." (*Id.*). His second trial defense was that the prosecution was not allowed to aggregate separate quantities of cocaine in order to reach the 50-gram threshold. (*Id.*, 48-49). Mr. Barnett testified that he had successfully maintained this defense in the Wayne County Circuit Court in at least one past case (*Id.*, 51-52).

Mr. Barnett testified that he did not pursue another chemical analysis of the cocaine, because he did not want to give the prosecution an opportunity to prove that the substance seized from petitioner was in fact a mixture and not pure cocaine. (GHT I, 57-60). He testified that he stipulated to the introduction of the chemist's report because of what petitioner had told him. (*Id.*, 61-62). Barnett testified that he knew that there was a discrepancy between the amount of cocaine

---

[3] Under Michigan practice, evidentiary hearings on the issue of ineffective assistance of counsel are called *Ginther* hearings, after *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

found by the chemist and the amount set forth in the police report, but that the discrepancy was not material, because both reported over 50 grams of cocaine. "There was a discrepancy, but it wasn't material, it didn't get him under 50 as I can recall." (*Id.*, 66).

Throughout the proceedings, the attorneys discussed the issue whether Mr. Barnett would be allowed to divulge otherwise privileged attorney-client communications with petitioner. Appellate counsel took the position that petitioner could insist on non-disclosure of privileged information. (GHT I, 67-68). The prosecutor opined that petitioner's communications could be used against him in a future trial only for purposes of impeachment and not as admission. The judge said that she did not know the answer to the question and asked the parties to research the issue. (GHT I, 68-69). The matter was adjourned to a future date.

The *Ginther* hearing reconvened on December 11, 2003. (*See* GHT II, docket # 21). Appellate counsel called Carole Wosniak-Dobson, who had served as the day-shift lieutenant for the Allen Park Police Department on January 29, 2001. (GHT II, 4-5). Lt. Wosniak-Dobson testified that, in responsive to a subpoena, she searched for records concerning the existence of video recording equipment in patrol cars in January of 2001. She testified that the departmental records did not go back that far. (*Id.*, 6). The lieutenant had no independent information indicating that Officer Mack's car was equipped with a video camera on that day. (*Id.*, 8).

Appellate counsel called John Mensinger, who was employed by the City of Allen Park in its municipal garage. In response to a subpoena, he produced records to show whether video equipment was installed in Officer Mack's police car on January 29, 2001. (*Id.*, 12). The records showed that no video equipment was ever installed in that vehicle. (*Id.*, 14-15).

Appellate counsel then called Inspector David Tringer of the Allen Park Police Department, again on the issue of the existence of video equipment in Officer Mack's car. He testified that he had no knowledge as to whether a tape was made of the traffic stop involving petitioner. (GHT II, 21).

Appellate counsel recalled Attorney Marvin Barnett to the witness stand. Mr. Barnett testified that he had reviewed his file since his last court appearance. (GHT II, 23). He testified that his file typically does not contain written notes of every conversation with a criminal defendant, for fear of memorializing incriminating information. (*Id.*, 23-24). Early in the examination, Barnett again asked to be relieved of his obligation to keep client confidences, because he could not continue to discuss the case in a vacuum. Appellate counsel, in a change of position from that articulated at the first day of hearings, stated that the attorney-client privilege would be deemed waived for purposes of the *Ginther* hearing, because the defendant himself had raised the issue of ineffective assistance of counsel. (*Id.*, 29). The court ruled, however, that the questions asked of Mr. Barnett had not yet required him to divulge client confidences, and the examination continued. Appellate counsel continued to pursue the viability of the two defenses presented by Attorney Barnett at trial. He again testified that he waived production of the chemist at trial to deprive the prosecution of the opportunity to prove that the seized cocaine was mixed with another substance. (*Id.*, 36-37). From conversations with his client, he knew that the material was a mixture of cocaine and another substance, so he did not want to confirm that fact by the chemist's testimony. (*Id.*, 37-38). Barnett testified that waiving the chemist's testimony was a tactical decision. He further testified that he discussed with petitioner "on numerous occasions" whether petitioner would testify. He said that petitioner was scared to death and did not want to testify and that he had "nothing to testify about."

(*Id.*, 42). Barnett said that he recommended that petitioner not get on the witness stand and lie and "that's exactly what he would have been doing if he would have gotten on the witness stand." (*Id.*, 42-43).

Mr. Barnett insisted that he had successfully presented the "mixture" defense in other trial courts before both judges and juries and had obtained for his client conviction on a lesser-included offense. (GHT II, 45-46). After further examination of Mr. Barnett on the same issues, the court adjourned to a future date.

The court reconvened on February 26, 2004. (GHT III, docket # 22). The examination of Mr. Barnett continued. He testified that he was unaware that previous counsel, Ms. Goldfarb, had been concerned about the weight of the cocaine and had asked for production of the chemist in court. (GHT III, 23). On cross-examination by the prosecutor, Mr. Barnett testified that he believed that he had interviewed petitioner's fiancee (who was in the car at the time of the stop), but that petitioner had told him not to get her involved in the case. (*Id.*, 28-29). He testified that he did not pursue the discrepancy between 67 grams and 75 grams of cocaine, because either number was over 50. (*Id.*, 29-30).

Defense counsel called Misty Chandler, by then petitioner's wife. (GHT III, 33-34). She testified that she and petitioner had been in the car for a couple of hours and that no one had been smoking marijuana. (*Id.*, 36-37). She testified that Officer Mack was rude, abusive, and a racist, but offered nothing exculpatory. (*Id.*, 38-40). Contrary to Barnett's testimony, she said that Mr. Barnett never talked to her. She said that she assumed that petitioner wanted her to be a witness, because she was present. (*Id.*, 41). She also testified that Inspector Tringer had told her that there was a videotape, but it had been recorded over routinely after thirty days. (*Id.*, 42).

Appellate counsel called petitioner as a witness. He admitted that he had three baggies on his person, but claimed that they were 14 grams each. He said that he told Ms. Goldfarb, his previous attorney, that the amount that he possessed had been under 50 grams and that he told Mr. Barnett the same thing. (GHT III, 57). Essentially, petitioner's position was that he had in his possession three bags, each containing one-half ounce of cocaine, totaling 42 grams. As a result, Ms. Goldfarb expressed her concerns to Judge Sullivan and procured an order for a re-weighing of the substance. (*Id.*, 57-59).

Petitioner testified that he wanted his then fiancee to testify and that she was present in the courtroom on the day of trial for that purpose. (GHT III, 61). On the day of trial, however, Mr. Barnett told him that he had decided not to call Ms. Chandler as a witness because her testimony was not necessary. (*Id.*, 61-62). Petitioner and Mr. Barnett discussed the possibility of petitioner's testifying, but Barnett advised him not to take the stand, "unless I wanted to get up there and lie." (*Id.*, 62-63). During a recess, however, petitioner told Barnett that he wanted to "get on the stand." (*Id.*, 64). Barnett responded that what petitioner had to say was not important and would actually hurt the case. He said that the judge "wouldn't believe me anyway." (*Id.*, 64).

On cross-examination, petitioner conceded that Barnett advised him that he did not have to take the stand but that he could testify if he wanted to. (GHT III, 67). This was contrary to the contention made in petitioner's *pro se* motion. (*Id.*). Petitioner admitted that he had three bags of cocaine on his person, as well as marijuana and some Valium. (*Id.*, 68). Petitioner repeated that the bags of cocaine each contained 14 grams. (*Id.*, 70).

After further testimony irrelevant to the present issues, appellate counsel for petitioner asked for an adjournment of the hearing so that Carin Goldfarb could be subpoenaed to testify. (GHT III, 77-78). The court granted the request, over the prosecutor's objection. (*Id.*, 79).

The court reconvened on March 10, 2004. (GHT IV, docket # 23). Carin Goldfarb, petitioner's previous appointed attorney, testified that petitioner told her that the weight of the cocaine was incorrect and that it did not weigh 50 grams. (GHT IV, 6). For this reason, she asked Judge Sullivan at the pretrial conference that the drugs be re-weighed. (*Id.*, 7-8). She was concerned that the chemist had weighed the packaging and that, without the packaging, the drugs would not meet the 50-gram statutory threshold. (*Id.*, 10-12). The parties stipulated that the prosecutor's notation in the file reflected that the prosecution would be required to have the chemist at trial to re-weigh the cocaine. (*Id.*, 14).

After Ms. Goldfarb testified, each attorney presented arguments to the court on the question of ineffective assistance of counsel. Judge Youngblood indicated that she would issue a written opinion in a "couple of weeks." (*Id.*, 35).

Four months later, the parties again appeared before Judge Youngblood for a continuation of the evidentiary hearing, on June 14, 2004. (GHT V, docket # 24). The transcript of the hearing reflects that the court had requested in May that the prosecutor retrieve the cocaine and have it brought to court for weighing, to "settle once and for all what the evidence was that they took from Mr. Branch and what it weighed." (GHT V, 3-4). The assistant prosecutor recited on the record that the Allen Park Police Department had looked for the cocaine and found that it had been destroyed. The prosecutor had four witnesses present to testify concerning the events leading up to

the destruction of the evidence. The court thereafter heard evidence for three days (July 14, July 28, and July 29, 2004) concerning the fate of the cocaine, which had been destroyed in April 2004. The testimony showed that Sgt. Susan Pitts, the property officer, had destroyed the evidence in 37 cases, including this case, on the belief that Lt. Mark Koller had authorized destruction. Some of the evidence pertained to active prosecutions, and some to closed cases. The destruction was not limited to drugs, but included videotapes and physical evidence as well. Koller denied that he had authorized destruction, but Pitts produced a single piece of paper with the word "destroy" written on it in Koller's handwriting, contending that she relied on this in destroying the evidence. The testifying officers all agreed that the evidence in the 37 cases should not have been destroyed, but they attempted to blame each other for the mistake. The Michigan State Police were then in the process of investigating the destruction of evidence. On September 24, 2004, the court heard argument from Attorney Korn and the prosecutor. (GHT VIIII [sic], docket # 28)..

2.  Trial Court Ruling

On November 30, 2004, Circuit Judge Carole Youngblood issued a 25-page opinion and order granting defendant's motion for a new trial. (Op. found in Court of Appeals record, docket # 31). The only issue framed by the trial court was whether Mr. Barnett was constitutionally ineffective for failing to present any meaningful defense against the charge: instead of following up on the issue of the weight of the cocaine, Barnett purposely failed to test the prosecution's ability to prove possession of 50 grams or more of cocaine in order to pursue two essentially frivolous defenses. (Op., 2). The trial court made findings concerning the testimony presented at the *Ginther* hearing, including the extensive testimony concerning the destruction of evidence in 37 cases. The

court noted that petitioner was not seeking relief on the basis of destruction of evidence, but only for ineffective assistance of counsel: "The defendant counters that this is not a destruction of the evidence case, it is a question of ineffective assistance of counsel relating to trial counsel's failure to enforce the court's order to have the drugs weighed in court. The defendant argues that the destruction of the evidence is significant because it compounds the prejudice the defendant suffered by permanently foreclosing the opportunity to challenge the weight element of the prosecutor's case." (Op., 17).

The trial judge found that Barnett was ineffective when he "stipulated to the only element of the prosecutor's case that Mr. Branch consistently contested." (Op., 19). Instead, Mr. Barnett presented two arguments at trial that the court deemed to be "frivolous": that the statute does not criminalize possession of pure cocaine because it is not a mixture, and the prosecutor cannot aggregate the weight of three packages of drugs found on a defendant's person. (Op., 20). The court found that Barnett's ineffective assistance at trial was compounded when the Allen Park Police Department "intentionally destroyed the evidence immediately following this court's order to bring the drugs to court to be weighed." (Op., 21). The court did not find that the evidence was destroyed in bad faith. "Whatever lies at the heart of the bizarre circumstances surrounding the Allen Park Police Department actions which raises in this court troubling doubts, the defendant has been denied his right to challenge the prosecutor's case on the element of weight by the destruction of the evidence." (Op., 21-22). The trial court granted the motion for a new trial.

**D.      Appellate Proceedings**

Petitioner withdrew his appeal as moot, in light of the grant of a new trial.  (Court of Appeals Order, docket # 29).   The prosecutor sought leave to appeal to the Michigan Court of Appeals from the order granting petitioner's motion for a new trial.  The state Court of Appeals granted leave to appeal.

By unpublished *per curiam* opinion issued June 6, 2006, the Michigan Court of Appeals reversed the grant of a new trial.  The appellate court agreed that the two defenses pursued by Barnett at trial "could be considered frivolous" and were not supported by Michigan law.  On this basis, the court found that Barnett's performance fell below an objective standard of reasonableness.  (Op., 2).  Even though the defenses presented by Barnett may have been frivolous, petitioner was required to establish that he was prejudiced, namely, that "there was a reasonable probability that the outcome at trial would have been different but for the errors."  (Op., 3).  The court found that petitioner failed to establish prejudice, because there was no evidence that Barnett's pursuit of the issue concerning the weight of the cocaine would have had any effect on the outcome of the case.  Both the Allen Park Police and the independent Michigan State Police Laboratory found the weight of cocaine to exceed the statutory minimum of 50 grams.  "While there is a discrepancy between the weight reported by the arresting officer and that set forth in the lab report, both amounts were well in excess of 50 grams.   Thus, defendant failed to prove that, but for Barnett's deficient representation, the outcome at trial might have been different." (Op., 3).  The court further remarked that the trial court had not engaged in a destruction of evidence analysis under the appropriate constitutional standard, which requires a showing of bad faith on the part of the police.  The court found that there was no testimony tending to show that the officers involved knew in April 2004

(two years after the trial) that the trial court had asked for re-weighing of the drugs. "While it appears that the officer who cleaned out the property room attempted to cover up the unauthorized destruction of the evidence, we cannot agree that the drugs were destroyed in bad faith. Rather, the evidence indicated that the drugs were apparently destroyed by mistake." Therefore, petitioner was not deprived of due process such that he should be entitled to an inference that the drugs would have weighed less than 50 grams, contrary to the chemist's report. (Op., 4). The appellate court therefore found that the trial court erred in granting a new trial, because petitioner failed to meet his burden of showing that counsel's deficient performance affected the outcome of the case.

The Court of Appeals denied petitioner's motion for reconsideration on July 25, 2006, and the Michigan Supreme Court denied leave to appeal on December 6, 2006, with one justice dissenting. This habeas corpus action followed.

## Applicable Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*,

440 F.3d 754, 762 (6th Cir. 2006).  If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009).  *De novo* review is restricted to instances where the state court did not address the merits of a claim.  In that limited set of circumstances,  "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

    The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning.  A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted).  A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of

the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. at 412; *Wilson v. Parker*, 515 F.3d at 691; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009). This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Jaradat v. Williams*, 591 F.3d 863, 864-65 (6th Cir. 2010); *Mills v. Cason*, 572 F.3d 246, 250 (6th Cir. 2009).

**Discussion**

**I.     Ineffective Assistance of Counsel**

Petitioner's principal contention is that his trial counsel, Marvin Barnett, was constitutionally ineffective because he pursued two frivolous defenses while failing to investigate and present the only viable defense -- that the cocaine admittedly possessed by petitioner weighed less than 50 grams.  All claims of ineffective assistance of counsel are subject to analysis under the test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  Petitioner must prove:  (1) that counsel's performance fell below an "objective standard of reasonableness;" and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome.[4]  A court considering a claim of ineffective assistance of counsel must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Strategic choices, made after investigation of law and the facts, are "virtually unchallengeable," especially when the strategic choice is supported by the defendant himself. *Id.* at 690-91.  To prevail on the second prong, petitioner must demonstrate a "reasonable probability" that the result of the trial would have been  different but for counsel's errors. *Id.* at 694.

---

[4] Petitioner's attempt to invoke the more lenient standard of *United States v. Cronic*, 466 U.S. 648 (1984), under which prejudice is presumed, is unavailing.  The presumption of prejudice applies in only three circumstances:  (1) the denial of counsel, (2) cases of state interference, and (3) actual conflicts of interest.  *Smith v. Robbins*, 528 U.S. 259, 287 (2000).  The present case does not fall within this narrow rule.

Because the state Court of Appeals directly addressed petitioner's claim of ineffective assistance of trial counsel under the *Strickland* standard, its decision must be afforded deference under AEDPA. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Johnson v. Bell*, 525 F.3d 466, 487 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 1668 (2009). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699. This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). Recent Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 129 S. Ct. at 1420; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). Furthermore, the findings of historical fact made by the state courts are presumed to be correct, in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

The state Court of Appeals determined that the two defenses advanced by Mr. Barnett at trial were frivolous under state law. This court is bound by that state-law determination, which appears amply supported by the authority cited in the Court of Appeals' opinion. Petitioner has therefore met the first *Strickland* standard by showing that the performance of his trial attorney fell below an objective standard of reasonableness. The state Court of Appeals went on, however, to find

that counsel's ineffective performance did not meet the second prong of the *Strickland* standard, under which a petitioner must show that counsel's performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687; *see Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). The issue for this court on habeas corpus review is whether the state Court of Appeals "applied *Strickland* to the facts of [this] case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699.

Petitioner's essential argument is that defense attorney Barnett abandoned the only "viable" defense by failing to have the cocaine weighed a third time or calling an expert to challenge the State Police laboratory findings. As the state Court of Appeals correctly noted, the drugs had been weighed twice, once by the Allen Park Police Department and once by the independent Michigan State Police laboratory. Each laboratory found the weight of the drugs to well exceed 50 grams, the statutory minimum. (Op., 3). Nevertheless, petitioner faults his counsel for failing to subject the drugs to yet a third laboratory test by another expert witness. To be deemed ineffective assistance, a defense attorney's decision not to call an expert witness must be so patently unreasonable that no competent attorney would have chosen the strategy. *See Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001). Thus, complaints of uncalled witnesses "are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). A habeas petitioner bears the burden of establishing a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Speculation about what witnesses might have said is not enough to establish prejudice. *See Smith v. West*, 640 F. Supp. 2d 222, 233 (W.D.N.Y. 2009). In the present case, the

drugs had been weighed twice, and nothing in the record supports a finding that a third laboratory test would have shown the quantity to be less than 50 grams. *See Wong v. Money*, 142 F.3d 313, 321-22 (6th Cir. 1998) (counsel's failure to seek third expert opinion not ineffective assistance because two previous experts agreed and petitioner failed to establish a reasonable probability that a third expert would disagree).

The state Court of Appeals noted two important facts in this regard. First, state appellate counsel never asked Mr. Barnett what petitioner had told Barnett concerning the weight of the drugs. Second, during the many months that this matter was pending before the state trial court in evidentiary hearings, appellate counsel never asked that the drugs (which were then still in existence) be re-weighed. This leads to an inference that petitioner and his appellate counsel knew the results of any re-weighing would be unfavorable. Instead of drawing this inference, the state trial court concluded, on the basis of speculation, that re-weighing might have helped petitioner. The state Court of Appeals was correct in rejecting this unsupportable presumption and concluding that petitioner "failed to prove that, but for Barnett's deficient representation, the outcome of trial might have been different." (Op., 3).

On the foregoing basis, I conclude that the decision of the state Court of Appeals was not objectively unreasonable and that petitioner's claim of ineffective assistance of counsel must be rejected.

## II.      Destruction of Evidence

In his habeas petition, petitioner raises a claim that he did not assert in the state trial court: destruction of material evidence in violation of the Due Process Clause. As is made clear in

the proposed statement of facts, petitioner's appellate counsel did not raise this claim in the state trial court. The destruction of evidence only became an issue when the trial judge ordered production of the cocaine months after the initial phase of the evidentiary hearing had concluded. It then came to light that the cocaine had been destroyed by a sergeant of the Allen Park Police Department in April 2004, over two years after petitioner's trial in the circuit court. The trial court noted that petitioner was not seeking relief on the basis of destruction of evidence (Op., 17), but petitioner now attempts to raise this due-process claim, relying on *Arizona v. Youngblood*, 488 U.S. 51 (1988).

Petitioner's due-process claim is meritless, on two separate grounds. First, the narrow due-process right to the preservation of evidence enunciated by the Supreme Court in *Youngblood* applies to pretrial proceedings. The Supreme Court has never applied the *Youngblood* analysis to post-conviction destruction of evidence. Under AEDPA, a habeas court may only order relief on the basis of clearly established holdings of the United States Supreme Court and may not establish principles of federal constitutional law that go beyond the scope of Supreme Court holdings. *See Williams*, 529 U.S. at 381. On this basis, the Sixth Circuit has squarely held that a claim of post-conviction destruction of evidence is "not cognizable on federal habeas review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

Second, even if the *Youngblood* analysis applies to post-conviction destruction of evidence, a finding of due-process violation must be based on a showing by the petitioner of bad faith on the part of police. *Youngblood*, 488 U.S. at 58. The state trial court did not find bad faith on the part of the Allen Park Police. The state Court of Appeals found that there was no evidence of bad faith. "Rather, the evidence indicated that the drugs were apparently destroyed by mistake." (Op., 4). Consequently, even if the *Youngblood* doctrine applies in habeas proceedings to post-

judgment destruction of evidence, this appellate finding, which is entitled to deference in this court, bars relief.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated: March 24, 2010          /s/  Joseph G. Scoville
                                   United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).